IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | : | CIVIL ACTION NO. 11-2411 |
| v. | : | |
| GIACAMO RANDAZZO | : | CRIMINAL ACTION NO. 06-288 |

**MEMORANDUM**

**Padova, J.**                                                                                                                                  **May 6, 2011**

Defendant Giacamo Randazzo has filed a Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255, in which he asks that we vacate his December 2007 sentence and restructure the sentence in a way that will not result in his mandatory deportation as an aggravated felon. The Government argues that Randazzo's Motion should be denied because he waived his right to collaterally challenge his conviction and sentence, his Motion is untimely, and/or the claims are meritless. We held an evidentiary hearing on March 29, 2011, and April 7, 2011, after which the parties submitted proposed findings of fact and conclusions of law. For the following reasons, we deny now Randazzo's Motion.

**I. BACKGROUND**

Randazzo was charged in a six-count Indictment with one count of conspiracy to commit interstate transportation of stolen property in violation of 18 U.S.C. § 371, and five counts of receipt and possession of a stolen motor vehicle in violation of 18 U.S.C. § 2314. The charges arose out of Randazzo's participation in a conspiracy which lasted from November 1998 to September 2004, and involved the theft and transport of at least twenty pieces of heavy equipment, motor vehicles and/or trailers from businesses in Pennsylvania, New Jersey and Maryland.

On February 26, 2007, Randazzo entered a guilty plea to all six counts of the Indictment. In his Guilty Plea Agreement, Randazzo agreed that, with limited exceptions, he would neither appeal

nor collaterally challenge his conviction or sentence. (Plea Agrmt. ¶ 10)

We held a change of plea hearing on February 26, 2007. At that hearing, we questioned Randazzo regarding his willingness to enter into, and understanding of, the Guilty Plea Agreement, and found that he was competent to plead, that his guilty plea was voluntary, and that there was a factual basis for the guilty plea. (N.T. 2/26/07 at 20-21.) Before the entry of the plea, the Assistant United States Attorney also asked that we "point out that there is a possible collateral consequence here regarding [Randazzo's] immigration status, deportation, which is something that is unrelated to what the Government's charged here, but it is a possible consequence that he could suffer from entering a plea." (Id. at 18-19). In response to that request, we advised Randazzo that "[t]here is a possible consequence that would or could affect your immigration status here in this country, that would follow from a conviction or from a guilty plea in this case." (Id. at 19.) We then asked Randazzo if he understood that instruction, and Randazzo responded "yes." (Id.)

We sentenced Randazzo on November 27, 2007. Prior to the sentencing hearing, Randazzo obtained new defense counsel, and the new counsel represented him at sentencing. As set forth in the Presentence Report, Randazzo had a total offense level of 22 and a Criminal History Category of I, which gave rise to an Advisory Guideline Range of 41-51 months.[1] Defense counsel stated the following on the record regarding the prospect of deportation:

---

[1] Randazzo's base offense level was 6 pursuant to U.S.S.G. § 2B1.1. The base level was increased by 14 levels pursuant to U.S.S.G. § 2B1.1(b)(1)(H), because the attempted loss was more than $400,000, but less than $1,000,000. The adjusted base level was increased by 2 levels pursuant to U.S.S.G. § 2B1.1(b)(2)(A), because the offense involved more than 10 but less than 50 victims. The adjusted base level was increased again by 2 pursuant to U.S.S.G. § 2B1.1(b)(4), because the offense involved receiving stolen property. Finally, Randazzo's offense level was reduced by 2 for acceptance of responsibility pursuant to U.S.S.G. § 3E1.1(a), resulting in a Total Offense Level of 22.

> I first and foremost like to state that my client, regardless of whatever sentence your Honor imposes, will suffer in ways that are not contemplated by individuals who commit crimes, not contemplated by the guidelines, and although they may be called collateral or administrative penalties, they are nevertheless penalties that will be suffered by my client. And the first and most important, I think, is the fact that he more likely, almost definitely will be deported as a result of his guilty plea, and the sentence that your Honor imposes and he will thereby lose the affections, and daily support, and contact with, and physical contact with all of the people in this room.

(N.T. 11/27/07 at 76.) We asked the Government to comment, and the Government stated:

> He's a legal permanent resident. He's been in the country for -- over 20 years.[2] It is questionable whether he will be deported or not. That is certainly not within [the purview of] the Department of Justice, it is with the immigration authorities but there is some question I understand. So but that's not something that we take part in. And it's not automatic, I would say to the Court from what I have learned.

(Id. at 80-81 (footnote added).)

Although Randazzo's counsel asked that we vary downward and impose a below-Guidelines sentence, we imposed a sentence of 41 months' imprisonment on each of the six Counts of the Indictment, to be served concurrently. The judgment was entered on December 4, 2007. Defendant did not appeal his conviction and sentence, and the judgment became final on December 18, 2007. More than three years later, on January 27, 2011, when he was nearing the end of his federal sentence, Defendant filed the instant Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. Approximately one month later, on March 1, 2011, Randazzo's federal sentence expired. Randazzo was transferred to the custody of Immigration and Customs Enforcement ("ICE"), based on a Notice to Appear, which asserted that he was subject to mandatory deportation, because he qualified as an

---

[2]In fact, Defendant is a 58 year old citizen of Italy, who immigrated to the United States in 1978, at the age of 26. He has lived in New Jersey ever since and is officially classified as a "Legal Permanent Resident Alien."

aggravated felon. To date, Randazzo remains in ICE custody at the Seneca County jail in Tiffin, Ohio.

In the meantime, on March 15, 2011, the Government filed its response to Randazzo's § 2255 Motion, and Randazzo filed a reply brief on March 21, 2011. We held hearings on the Motion on March 29, 2011, and April 7, 2011, and the parties filed post-hearing submissions on April 22, 2011.

## II. LEGAL STANDARD

Randazzo has moved for relief pursuant to 28 U.S.C. § 2255, which provides as follows:

> A prisoner in custody under sentence of a court established by Act of Congress claiming the right to be released upon the ground that the sentence was imposed in violation of the Constitution or laws of the United States, or that the court was without jurisdiction to impose such sentence, or that the sentence was in excess of the maximum authorized by law, or is otherwise subject to collateral attack, may move the court which imposed the sentence to vacate, set aside or correct the sentence.

28 U.S.C. § 2255(a). "In order to prevail on a Section 2255 motion, the movant's claimed errors of law must be constitutional, jurisdictional, 'a fundamental defect which inherently results in a complete miscarriage of justice,' or 'an omission inconsistent with the rudimentary demands of fair procedure.'" United States v. Perkins, Crim. A. No. 03-303, 2008 WL 399336, at *1 (E.D. Pa. Feb. 14, 2008) (quoting Hill v. United States, 368 U.S. 424, 428 (1962)).

The United States Court of Appeals for the Third Circuit has held that a waiver of appellate or collateral rights is enforceable provided that (1) it was entered into knowingly and voluntarily; (2) no specific exception set forth in the agreement applies; and (3) enforcement of the waiver would not work a miscarriage of justice. United States v. Goodson, 544 F.3d 529, 536 (3d Cir. 2008) (citing United States v. Jackson, 523 F.3d 234, 243-44 (3d Cir. 2008)); see also United States v. Khattak, 273 F.3d 557, 562-63 (3d Cir. 2001); United States v. Shedrick, 493 F.3d 292, 297-98 (3d

4

Cir. 2007). To evaluate whether enforcement of a waiver would result in a miscarriage of justice, the Third Circuit has suggested a number of factors that may be considered, including: "'the clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" Khattak, 273 F.3d at 563 (quoting United States v. Teeter, 257 F.3d 14, 25-26 (1st Cir. 2001)).

Circumstances in which an error amounts to a miscarriage of justice are "unusual," Khattak, 273 F.3d at 562, and the "miscarriage of justice" exception must be "'applied sparingly and without undue generosity.'" United States v. Wilson, 429 F.3d 455, 458 (3d Cir. 2005) (quoting Teeter, 257 F.3d at 26). Indeed, the Third Circuit has recognized: "'Waiver would be nearly meaningless if it included only those appeals that border on the frivolous . . . . While it may appear unjust to allow criminal defendants to bargain away meritorious appeals, such is the necessary consequence of a system in which the right to appeal may be freely traded.'" Khattak, 273 F.3d at 561-62 (quoting United States v. Howle, 166 F.3d 1166, 1169 (11th Cir. 1999)).

**III. DISCUSSION**

In the § 2255 Motion, Randazzo argues that his sentencing counsel was constitutionally ineffective, because counsel failed to advise Randazzo that his deportation would only be mandatory if he were sentenced to one year or more of imprisonment on any single count of the Indictment, and failed to advocate for a series of consecutive, shorter sentences, which would result in deportation being discretionary.[3] He further argues that his sentence violated due process because the court was

---

[3] Under 8 U.S.C. § 1101(a)(43)(G), a defendant who is convicted of "a theft offense (including the receipt of stolen property)" and is sentenced for that particular offense to a term of imprisonment of more than one year, has been convicted of an "aggravated felony." Under 8 U.S.C.

5

under a misapprehension of the facts and law regarding deportation, and that his sentencing counsel was ineffective in failing to advise Randazzo that he had a right to appeal his sentence on that basis.[4]

As noted above, the Government argues, among other things, that Randazzo waived his right to assert these claims pursuant to the collateral attack waiver in his guilty plea. The Plea Agreement provided, and Defendant agreed, as follows:

> In exchange for the undertakings made by the government in entering this plea agreement, the defendant voluntarily and expressly waives all rights to appeal or collaterally attack the defendant's conviction, sentence, or any other matter relating to this prosecution, whether such a right to appeal or collateral attack arises under 18 U.S.C. § 3742, 28 U.S.C. § 1291, 28 U.S.C. § 2255, or any other provision of law. This waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived.

---

§ 1227(a)(2)(iii), "any alien who is convicted of an aggravated felony at any time after admission is deportable." In aggravated felony cases, deportation is mandatory. See Jeune v. Att'y Gen., 476 F.3d 199, 201 (3d Cir. 2007). In contrast, where a defendant has been convicted of a theft offense for which the sentence imposed is less than one year, he is not deemed to have been convicted of an "aggravated felony," see generally 8 U.S.C. § 1101(1)(43)(G) (including requirement that sentence be one year or more), and he is eligible to apply for a cancellation of removal under 8 U.S.C. § 1229b(a). See generally Nugent v. Ashcroft, 367 F.3d 162, 169 (3d Cir. 2004). Moreover, one district court has held that whether a defendant was sentenced to a term of imprisonment of one year or more is ascertained on a count-by-count basis. See United States v. Shaw, Crim A. No. 99-525, Civ. A. No. 03-6759, 2004 WL 1858336, *10-11 (E.D. Pa. Aug. 11, 2004). Thus, Randazzo argues, he could have escaped mandatory deportation if the Court had imposed the same 41-month sentence, but structured it as several shorter sentences of imprisonment, running consecutively, rather than imposing concurrent 41-month sentences on each of the six counts of the Indictment. Specifically, Randazzo argues that the Court could have sentenced him to "an eleven month term on one count and five ten month terms on the other counts – three of them concurrent to the eleven months and to one another, and two concurrent – [Randazzo's] deportation would not have been mandatory." (Def.'s Mem. in Aid of Preliminary Determination under § 2255 ("Def.'s Mem.") at 4.)

[4] In his Motion, Randazzo also asserted claims (1) that his plea counsel was ineffective for failing to advise him of the immigration consequences of the plea or to seek plea agreement terms that would protect Randazzo from automatic deportation, and (2) that his guilty plea was involuntary on account of the Court's failure to advise him of the immigration consequences of the plea. Randazzo, however, withdrew these two claims at our April 7, 2011 hearing. (N.T. 4/7/11 at 19; see also Def.'s Proposed Findings of Fact, ¶ 29.)

6

(Guilty Plea Agreement ¶ 10.) Notwithstanding this waiver, the Plea Agreement permits Randazzo certain specific appellate rights. (Id.) First, it permits him to file a direct appeal of his sentence if the Government appeals the sentence. Second, even if the Government does not appeal, the Plea Agreement permits Randazzo to file a direct appeal to raise the following limited claims: "(1) the defendant's sentence on any count of conviction exceeds the statutory maximum for that count . . . ; (2) the sentencing judge erroneously departed upward pursuant to the Sentencing Guidelines; [or] (3) the sentencing judge . . . imposed an unreasonable sentence above the final Sentencing Guideline range determined by the Court." (Id.)

Randazzo's counsel conceded at our April 7, 2011 hearing that Randazzo's guilty plea, as well as the included waiver, was knowing and voluntary. (N.T. 4/7/11 at 10, 12, 15.). He also advances no argument that one of the specific exceptions to waiver in the Guilty Plea Agreement applies. Instead, he argues that his knowing and voluntary waiver does not bar his current claims, because enforcement of the waiver would result in a miscarriage of justice.[5] See Goodson, 544 F.3d

---

[5]Randazzo also periodically suggests that his claims cannot be waived because they are constitutional claims and the plea agreement, in paragraph 10, states that the "waiver is not intended to bar the assertion of constitutional claims that the relevant case law holds cannot be waived." (See, e.g., Def.'s Reply Br. at 19 ("[T]he waiver can be read -- and therefore should be read . . . . -- to exempt constitutional claims such as the validity of a sentence imposed under a misapprehension of fact and law or imposed without the effective assistance of counsel."); N.T. 4/7/11 at 12 (arguing that "you can't waive away your right to effective assistance of counsel"). However, Randazzo points to no case law that holds that the constitutional claims that he has raised here cannot be waived. Moreover, the case law is clear that claims concerning the ineffectiveness of sentencing counsel are not categorically outside the scope of an appellate and collateral attack waiver. See, e.g., United States v. Akbar, 181 F. App'x 283, 287 (3d Cir. 2006) (stating that waiver does not "'become[ ] unenforceable simply because a defendant claims . . . ineffective assistance'") (quoting United States v. Monzon, 359 F.3d 110, 118-19 (2d Cir. 2004)); United States v. Elliott, Crim. A. No. 03-388, 2010 WL 2978024, at *9 (E.D. Pa. July 12, 2010) (stating that defendant may raise a claim that counsel was ineffective in negotiating the plea agreement, but all other ineffectiveness claims are waived). Accordingly, we reject Randazzo's argument that his claims are outside the scope of his waiver simply by virtue of being constitutional.

7

at 536 (setting forth miscarriage of justice exception to waiver) (citing Jackson, 523 F.3d at 243-44). We find, however, that there is no injustice in enforcing the waiver under the circumstances presented, both because the deportation consequences of Randazzo's conviction and sentence are not unjust and because the claims Randazzo seeks to raise lack merit.

### A. The Alleged Injustice of the Deportation Consequences

Randazzo essentially argues that it is unjust to subject him to mandatory deportation when we had the discretion to sentence him in a way that would leave his deportation to the discretion of the immigration authorities. In Randazzo's view, had his counsel advised us that the immigration consequences would be more favorable to him if we sentenced him to a series of shorter, consecutive sentences (that added up to the same total sentence of 41 months), we would have structured the sentence in that way.

As noted above, in ascertaining whether enforcement of a knowing and voluntary waiver results in a miscarriage of justice, we may consider: "'the clarity of the error, its gravity, its character . . . , the impact of the error on the defendant, the impact of correcting the error on the government, and the extent to which the defendant acquiesced in the result.'" Khattak, 273 F.3d at 563 (quoting Teeter, 257 F.3d at 25-26). Here, Randazzo does not contend that we erred in sentencing him to concurrent sentences and, in fact, we did not err in that regard. Not only do "judges . . . retain substantial discretion" whether to impose consecutive or concurrent sentences, but the general rule is that "sentences imposed at the same time run concurrently unless a statute mandates or the court orders otherwise." United States v. Velasquez, 304 F.3d 237, 241 (3d Cir. 2002) (citing U.S.S.G. § 5G1.2 and 18 U.S.C. § 3584). Thus, there was nothing improper about the sentence we imposed.

Randazzo nevertheless argues that our imposition of concurrent sentences was unjust because

the sentence will result in his mandatory deportation.  See Jeune, 476 F.3d at 201.  However, Congress has unequivocally dictated that aggravated felons be deported.  8 U.S.C. § 1227(a)(2)(iii) ("any alien who is convicted of an aggravated felony at any time after admission is deportable"); 8 U.S.C. § 1101(a)(43)(G) (stating that a defendant who is sentenced to a term of imprisonment of more than one year for a theft offense has been convicted of an "aggravated felony").  While a theft conviction may only qualify as an aggravated felony if it results in a sentence of one year or more on any given count, it is inconceivable that a defendant's mandatory deportation under the standards set by Congress is a miscarriage of justice where, as here, the defendant is convicted of multiple theft offenses, each of which gives rise to an Advisory Guideline range that well exceeds one year.  To the contrary, in our view, Randazzo's mandatory deportation is the consequence of his crimes that Congress both anticipated and believed just.

It is also worth noting that this is not a situation in which the structure of our sentence will result in the deportation of an individual who, if sentenced to shorter, consecutive sentences, would have an unequivocal right to remain in this country.  Indeed, even assuming *arguendo* that Randazzo could both prevail on one of his habeas claims and persuade us at resentencing to reformulate his sentence, he may very well be deported anyway; his deportation would simply be subject to the discretion of the immigration authorities.  See 8 U.S.C. § 1229b(a) (providing that "the Attorney General may cancel removal" for an individual who has been a lawful permanent resident for more than five years, has continuously resided in the United States for seven years, and has not been convicted of an aggravated felony (emphasis added)).  Thus, the actual immigration "impact" of our imposition of concurrent sentences is not that Randazzo will be deported; it is only that he will lose the right to argue to the immigration authorities that he should not be deported, an argument that has

9

no guarantee of success.

Finally, we observe that the record is clear that when Randazzo pled guilty and waived any right to collaterally attack his conviction and sentence, he acquiesced in the expected result that he would be deported. His plea counsel testified at our March 29, 2011 hearing that he specifically advised Randazzo several times prior to the plea hearing, that he would be deported if he could not effectively cooperate with the Government. (N.T. 3/29/11 at 27 ("I spoke with [Randazzo] several times saying that if you don't cooperate you're likely going to get a sentence that's going to require that you be deported . . ."); id. at 28 ("I said to [Randazzo], he was going to get deported if he got convicted unless he was a cooperation status."); id. at 30 ("[I]t was clear to me that this type of a 41-month range would expose Mr. Randazzo to deportation such that I made that clear to him.")). We also advised Randazzo during the plea hearing that he faced the possibility of deportation. (See N.T. 2/26/07 at 18-19.) Accordingly, we find that Randazzo knew that he would likely be deported as a result of his conviction and sentence,[6] and he nevertheless knowingly and voluntarily waived his right to appeal or collaterally attack the very conviction and sentence that would trigger the deportation. There is therefore no injustice in enforcing Randazzo's waiver to prohibit him from making arguments that would only gain him the right to challenge the deportation that he expected when he agreed to the collateral attack waiver in the first place.

For all of the above reasons, and bearing in mind our obligation to apply the miscarriage of justice exception "sparingly and without undue generosity," Wilson, 429 F.3d at 458, we conclude that there is no miscarriage of justice in enforcing Randazzo's waiver of his right to collaterally

---

[6]Randazzo concedes this point, as he proposes as a finding of fact that "[b]ased on the advice he received from [plea counsel], defendant Randazzo had no reason to think that his eventual deportation was other than inevitable." (Def.'s Proposed Finding of Fact, ¶ 16.)

attack his conviction and sentence to prohibit the claims he asserts here, all of which are designed to avoid his mandatory deportation.

B.    The Merits of the Underlying Claims

We also find that there is no miscarriage of justice in enforcing Randazzo's collateral attack waiver because the three claims he seeks to raise in his habeas petition are meritless.[7]

1.    Sentencing Counsel's Ineffectiveness

As noted above, Randazzo claims that he was subject to constitutionally deficient lawyering at his sentencing, insofar as sentencing counsel did not adequately advise him regarding the risk of deportation and potential ways to reduce that risk, and did not advise the court as to the controlling law regarding deportation. In Strickland v. Washington, 466 U.S. 668 (1984), the United States Supreme Court held that criminal defendants have a Sixth Amendment right to "reasonably

---

[7]In addition to being meritless and waived, Randazzo's claims are untimely because he asserted them over three years after his conviction became final. See 28 U.S.C. § 2255(f) (generally requiring that § 2255 petition be filed within one year of final judgment). Randazzo filed his Motion on January 27, 2011, well more than one year after his judgment of conviction became final on December 18, 2007. Randazzo nevertheless argues that his claims fall within an exception to the usual one-year statute that provides that the one-year time period does not begin to run until "the date on which the right asserted was initially recognized by the Supreme Court, if that right has been newly recognized by the Supreme Court and made retroactively applicable to cases on collateral review." 28 U.S.C. § 2255(f)(3). In Randazzo's view, his claims rest on a right that the Supreme Court newly recognized in Padilla v. Kentucky, 130 S. Ct. 1473 (2010), which was decided on March 31, 2010. In Padilla, the Supreme Court held that a defense attorney's conduct falls below an objective standard of reasonableness when the attorney fails to advise his noncitizen client, prior to the client's acceptance of a plea, that the plea carries a risk of deportation. Id. at 1482-83, 1486. Although Randazzo argues that his claims rest on the new right announced in Padilla, he does not argue that his plea counsel was ineffective for failing to advise him that he could or would be deported. Moreover, we reject Randazzo's suggestion that Padilla should be read more broadly to create a general right to complete and accurate counseling at sentencing regarding the precise immigration consequences of a conviction and sentence. Accordingly, we conclude that Randazzo's claims do not rest on a right that was newly recognized by the Supreme Court in Padilla. Under these circumstances, even if he had not waived his right to raise the claims in his plea agreement, the claims would be untimely under the one year statute of limitations in 28 U.S.C. § 2255(f).

effective" legal assistance. Id. at 687. To prove constitutionally inadequate representation, a criminal defendant must demonstrate both that (1) his attorney's performance was deficient, i.e., that the performance was unreasonable under prevailing professional standards, and (2) that he was prejudiced by the attorney's performance. Id. "A convicted defendant making a claim of ineffective assistance must identify the acts or omissions of counsel that are alleged not to have been the result of reasonable professional judgment." Id. 466 U.S. at 690.

In order to show that counsel's performance was objectively unreasonable, a defendant must show that his counsel made errors so serious that he was not "functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Strickland, 466 US. at 687. When "evaluating counsel's performance, we are 'highly deferential' and 'indulge a strong presumption' that, under the circumstances, counsel's challenged actions 'might be considered sound . . . strategy.'" Buehl v. Vaughn, 166 F.3d 163, 169 (3d Cir. 1999) (quoting Strickland, 466 U.S. at 689). Ultimately, "[t]he question is whether an attorney's representation amounted to incompetence under 'prevailing professional norms,' not whether it deviated from best practices or most common custom." Harrington v. Richter, 131 S. Ct. 770, 788 (2011) (quoting Strickland, 466 U.S. at 690).

We conclude that sentencing counsel's failure to advise the court of the option of, and advocate for, a series of shorter, consecutive sentences that would trigger only discretionary deportation rather than mandatory deportation, see n.3, supra, does not constitute constitutional ineffectiveness. At our hearing on April 7, 2011, sentencing counsel testified that, at the time of Randazzo's sentencing, he was not aware that Randazzo could avoid mandatory deportation if the court structured his sentence differently. (N.T. 4/7/11 at 27-28, 38-39.) Rather, he believed that deportation was essentially a foregone conclusion of Randazzo's conviction. (See id. at 25-26.)

12

That said, not being well-versed in the complex area of immigration law, sentencing counsel advised Randazzo to consult with an immigration lawyer whom counsel recommended. (Id. at 25, 34, 44.) Randazzo, in fact, consulted with the recommended immigration lawyer. (Id. at 35.) Sentencing counsel subsequently learned, either in a conversation with the immigration attorney or through a report from Randazzo, that the immigration lawyer also understood deportation to be the likely consequence of Randazzo's conviction. (Id. at 35-36, 43, 45-46, 48.) Thereafter, sentencing counsel did not argue to the court that Randazzo's sentence should be structured in a way to make deportation discretionary rather than mandatory, and did not correct the Government's remark at sentencing that it was "questionable" whether Randazzo would be deported. (See N.T. 11/27/07 at 80-81.) Rather, he argued to the court that Randazzo's expected deportation was a mitigating circumstance that the court should consider in sentencing. (Id. at 76; see also N.T. 4/7/11 at 36-38.)

Under these circumstances, counsel's performance was not "unreasonable under prevailing professional standards," and did not "f[a]ll below an objective standard of reasonableness." Strickland, 466 U.S. at 688, 694. To the contrary, it was well within the scope of counsel's reasonable professional judgment to advise Randazzo that he likely faced deportation and then to refer him to immigration counsel for further advice regarding the deportation consequences of his plea. As the United States Supreme Court recently recognized: "Immigration law can be complex, and it is a legal specialty of its own." Padilla, 130 S. Ct. at 1483. As such, "when the law is not succinct and straightforward . . . , a criminal defense attorney [representing a defendant at a guilty plea hearing] need do no more than advise a noncitizen that pending charges may carry a risk of

13

adverse immigration consequences."[8] Id. (footnote omitted). Where, as here, both plea counsel and sentencing counsel correctly advised Randazzo that deportation was the likely result of his conviction, and sentencing counsel exercised his professional judgment to refer Randazzo to an immigration expert for any further questions regarding the intricacies of immigration and deportation, sentencing counsel clearly satisfied his professional obligations. Accordingly, Randazzo's claim that counsel was ineffective for failing to advise him regarding the immigration benefits of a series of shorter, consecutive sentences, and failing to advocate for such a structured sentence, has no merit.

### 2. Misapprehension of Facts and Law

Randazzo also claims that his sentence violated due process because we sentenced him under a misapprehension of the law and facts concerning the immigration consequences of the conviction and sentence. Specifically, he argues that we did not fully understand that our sentence would result in the very significant consequence of deportation. (Def.'s Mem. at 9 (arguing that we misapprehended "the significant immigration consequences to the defendant which resulted not only from the length but [also] from the structure of the sentence.")). He maintains that our misapprehension in this regard resulted from the United States Attorney's "inaccurate and

---

[8] Randazzo takes the position that the law is succinct and straightforward concerning the circumstances in which a theft offense constitutes an aggravated felony, including the principle that "if the sentence on each count [was less than one year], defendant's conviction would not qualify as an 'aggravated felony.'" Shaw, 2004 WL 1858336, at *11. He therefore takes the position that sentencing counsel should have known to request a structured sentence in which no single count carried a sentence of a year or more. However, Randazzo has identified only a single, unpublished district court case in which this allegedly succinct and straightforward principle has been stated and applied. See id. Moreover, that same case is the only case that Randazzo has cited in which a court imposed a structured sentence such as the one he requests here as a means to avoid mandatory deportation. Under these circumstances, and given the overall complexity of immigration law, we find that this law on which Randazzo relies is neither succinct nor straightforward.

misleading" representation to the Court that deportation would not necessarily result from Randazzo's anticipated sentence, and sentencing counsel's failure to correct this misstatement of fact and law. (Def.'s Mem. at 9; N.T. 11/27/07 at 80-81.)

"[I]t is beyond dispute that a sentencing calculation may violate the due process clause of the Fifth Amendment if there is a possibility that the sentence imposed may have been based on legal and/or factual error." United States v. Mannino, 212 F.3d 835, 846 (3d Cir. 2000) (citations omitted) In addition, "due process may require resentencing when the information on which the sentencing court may have relied . . . is mistaken or unreliable." United States v. Katzin, 824 F.2d 234, 240 (3d Cir. 1987) (citing Moore v. United States, 571 F.2d 179, 183-84 & n. 7 (3d Cir.1978)).

Here, however, we did not base our sentence on legal or factual error, or on mistaken or unreliable information. Contrary to Randazzo's assertion, we in no way relied on the Government's representation that Randazzo was unlikely to be deported on account of his conviction and sentence. Rather, we accepted the facts and law in this regard as stated by Randazzo's counsel -- that Defendant "almost definitely will be deported as a result of his guilty plea, and the sentence . . . impose[d] . . . ." (N.T. 11/27/07, at 76.) With that full and correct understanding, we imposed a forty-one month sentence on each count of the Indictment, to run concurrently. Accordingly, we correctly understood that Randazzo would likely be deported as a result of his conviction and sentence, and imposed a Guidelines sentence with full knowledge of that fact. Randazzo's claim that we imposed the sentence based on a misapprehension of the deportation consequences of our sentence is therefore meritless.

### 3. Ineffectiveness of Sentencing Counsel in Failing to Appeal

Finally, Randazzo argues that counsel was ineffective in failing to advise Randazzo that he

had the right to appeal his sentence on due process grounds because the sentence was imposed under a misapprehension of the applicable facts and law. However, as explained above, there is no merit to the due process claim that Randazzo believes he should have raised on appeal. Accordingly, counsel was not ineffective in failing to advise Randazzo to raise that claim on direct appeal. See, e.g., United States v. Sanders, 165 F.3d 248, 253 (3d Cir. 1999) ("There can be no Sixth Amendment deprivation of effective counsel based on an attorney's failure to raise a meritless argument."). Counsel's conduct in failing to advise Randazzo to raise that claim on appeal is also not ineffective in light of Randazzo's knowing and voluntary appellate waiver. See, e.g., United States v. Mabry, 536 F.3d 231, 242 n.14 (3d Cir. 2008) ("[O]ne would wonder how counsel's failure to file a notice of appeal could be considered 'outside the wide range of professionally competent assistance,' if the right to appeal had been knowingly and voluntarily waived." (quoting Strickland, 466 U.S. at 690)). Accordingly, we find no merit in Randazzo's claim that his counsel was ineffective in failing to advise him to file a direct appeal on due process grounds.

## IV. CONCLUSION

For the foregoing reasons, we enforce Randazzo's collateral attack waiver in his Guilty Plea agreement and deny Randazzo's Motion to Vacate Sentence pursuant to 28 U.S.C. § 2255. An appropriate Order follows.

BY THE COURT:

/s/ John R. Padova, J.

_____

John R. Padova, J.